**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**KRISTIE A. MITCHELL**
**Plaintiff,**

**v.** **Case No. 25-C-2015**

**FRANK BISIGNANO,**
**Commissioner of the Social Security Administration**
**Defendant.**

---

## DECISION AND ORDER

Plaintiff Kristie Mitchell seeks judicial review of the denial of her application for social security disability benefits. Plaintiff argues the Administrative Law Judge (ALJ) assigned the case failed to properly evaluate the opinion of an agency consultative psychologist and overlooked an opinion from her therapist. I agree and thus remand the matter for further proceedings.

## I. FACTS AND BACKGROUND

Because plaintiff seeks remand based on two discrete errors, detailed review of the record is unnecessary. Plaintiff applied for benefits in June 2022, alleging that she became disabled as of November 30, 2016, due to vertigo, depression, obsessive-compulsive disorder (OCD), anxiety, panic attacks, and migraine headaches. (Tr. at 20, 212, 245, 251.) She reported that her vertigo interfered with her ability to complete daily activities; that she experienced frequent migraines, which could be incapacitating for hours at a time; and that she suffered from anxiety and depression, which made it hard to get out of bed most days. (Tr. at 278.) She alleged that due to the unpredictability of her symptoms she could not establish a routine. (Tr. at 284.)

The agency sent plaintiff for a mental status evaluation with Scott Trippe, Psy.D., on June 2, 2023. Plaintiff reported that she worked in retail for several years before anxiety, panic attacks, and depressive episodes rendered her disabled. She further reported graduating from high school, in special education classes throughout due to a learning disability. (Tr. at 1695.) On mental status exam, plaintiff was fully oriented, with logical thought processes and cooperative behavior. She displayed non-verbal signs of anxiety and reported feeling depressed every day. (Tr. at 1696.) She displayed no significant difficulty recalling her personal history and described her memory as "okay." On testing, however, she was able to recall three words immediately after hearing them, but only two of those words after a five-minute delay, as well as recalled four digits forwards and two digits backwards, representing below average short-term recall. She also displayed poor basic math calculation skills. She demonstrated an average fund of working knowledge and no significant difficulty maintaining her focus during the hour-long interview. She displayed partial insight into her current situation. Regarding her functioning, she reported needing help managing money due to impulsive spending; she also needed reminders to take medications. (Tr. at 1697.) Dr. Trippe diagnosed an unspecified anxiety disorder, writing:

> Kristie Mitchell is displaying moderate-to-severe overall impairment in her cognitive, mental, and/or emotional ability to perform previous work duties and moderate-to-severe overall impairment in her cognitive, mental, and/or emotional ability to perform unskilled work duties. These functional deficits are expected to last for a continuous period of not less than 12 months.

(Tr. at 1698.) In assessing her work capacity, Dr. Trippe wrote:

> Kristie Mitchell is unlikely to have difficulty understanding, recalling, and carrying out work instructions. She is likely to have moderate difficulty working with supervisors and co-workers. She is unlikely to have difficulty maintaining her concentration on task. She may have difficulty coping with work stress or adapting to changes at work. She would benefit from the assistance of others to

manage her money.

(Tr. at 1698.)

The agency denied the application initially based on the review of Don Johnson, Ph.D., who found mild limitation in the ability to understand, remember, or apply information; moderate limitation in the ability to interact with others; mild limitation in the ability concentrate, persist, or maintain pace; and moderate limitation in the ability to adapt or manage oneself. (Tr. at 112.) Dr. Johnson concluded that plaintiff could understand, remember and carry out simple instructions, attend and concentrate for at least two hours at a time, interact with others, and adapt to routine changes. (Tr. at 115.) Plaintiff requested reconsideration (Tr. at 140), but the agency maintained the denial based on the review of Tom VanHoose, Ph.D., who agreed with Dr. Johnson's assessment of the four broad areas of mental functioning. (Tr. at 124.) Dr. VanHoose phrased his conclusion as to plaintiff's capacity for work somewhat differently, indicating that plaintiff "retains the ability to understand, remember, and carry out simple instructions; sustain attention for two-hour periods with normal breaks; apply adequate judgment to simple work tasks; interact appropriately with others; and complete a routine workday under normal supervision." (Tr. at 128.)

Plaintiff then requested a hearing before an ALJ (Tr. at 151), testifying that due to her depression, anxiety, chronic migraines, and vertigo, she could not sustain full-time work (Tr. at 54). She indicated that she had a hard time focusing and staying task oriented. (Tr. at 61.) She also needed reminders to tend to her hygiene and complete chores around the house (Tr. at 70), testimony corroborated by her mother (Tr. at 74). Plaintiff's mother did not think plaintiff could live independently. (Tr. at 75.)

In his decision, the ALJ determined that plaintiff retained the physical ability to perform

medium work, with additional climbing and environmental limitations. Mentally, the ALJ found plaintiff limited to simple and routine tasks, unable to perform work requiring a specific production rate, and with no public interaction or tandem tasks with others. (Tr. at 26.) In making this finding, the ALJ partially credited the opinions of the non-examining agency psychological consultants, Drs. Johnson and VanHoose, adding additional limitations to account for deficiencies in concentration, persistence and pace related to headaches and vertigo, and specific social interaction limitations (no public contact, no tandem tasks), which the consultants failed to ascribe despite finding a moderate limitation in that broad area. (Tr. at 35.)

The ALJ evaluated Dr. Trippe's opinion as follows:

> Dr. Scott Trippe reported that the claimant exhibited moderate-to-severe overall impairment in her cognitive, mental, and/or emotional ability to perform previous work duties and moderate-to- severe overall impairment in her cognitive, mental, and/or emotional ability to perform unskilled work duties. He further opined these functional deficits were expected to last for a continuous period of not less than 12 months. In addition, Dr. Trippe opined the claimant would be unlikely to have difficulty understanding, recalling, and carrying out work instructions and maintaining her concentration on task, but that she would be likely to have moderate difficulty working with supervisors and co-workers and that she may have difficulty coping with work stress or adapting to changes at work. Lastly, he opined the claimant would benefit from the assistance of others to manage her money (Exhibit 5F, p.4).
>
> The claimant underwent a psychological consultative evaluation on June 2, 2023, at which time she described having depression and anxiety that interfered with her ability to work because of problems working with others, panic attacks, and because it had started to affect her migraines and vertigo. On exam, she was appropriately attired. The claimant was cooperative. She displayed nonverbal signs of anxiety in the form of constantly rubbing her hands together (Exhibit 5F, p.2). However, she demonstrated no significant difficulty recalling her personal history, and self-described her memory as okay. She was able to recall three words immediately after hearing them, but only two of those words after a five-minute delay as well as recall four digits forwards and two digits backwards, which represented below average short-term recall. The claimant demonstrated an average fund of working knowledge, no significant difficulty maintaining her

> focus, and no difficulty with the use of abstract thought process. She exhibited partial insight into her situation, and her practical reasoning skills appeared intact in most areas (Exhibit 5F, p.3).
>
> The undersigned does not find Dr. Trippe's opinion to be persuasive as he failed to refer to his own examination findings as evidentiary support for his assessment. In fact, Dr. Trippe's opinion is internally inconsistent. On the one hand, Dr. Trippe assessed moderate to severe impairment in the claimant's cognitive and "mental" ability; yet, on exam, the claimant showed no cognitive deficit. She demonstrated an average fund of working knowledge, no significant difficulty maintaining focus, and intact abstract thought processing and reasoning skills (Exhibit 5F, p.3). Moreover, after opining the claimant would have moderate to severe impairment cognitively and mentally, Dr. Trippe inconsistently opined that the claimant would be unlikely to have difficulty understanding, recalling, and carrying out work instructions and maintaining concentration on tasks. Dr. Trippe's opinion is also vague. While he opined the claimant would have "moderate difficulty" with supervisors and co-workers, he did not assess any specific limitations regarding the degree and frequency of interaction with co-workers and supervisors that the claimant would have.

(Tr. at 35-36.)

The ALJ reviewed some of the treatment notes from plaintiff's therapist, Gregory Henderson, LCSW (Tr. at 31, 32-33, 34), but he did not discuss Henderson's October 2023 summary, completed after many years of treatment:[1]

> Kristi[e] continues to struggle with establishing a daily routine with structure. She has had many attempts at employment all of which have not been successful. She has applied for Social Security disability. She did begin the process with department of vocational rehabilitation at the undersigned's recommendation. She is encouraged to continue in that process. She experiences a high degree of social anxiety which limits her ability to seek out and maintain employment as well as develop friendships[.]

(Tr. at 1849, 1936.)

Based on the work capacity set forth above, and relying on the testimony of a vocational

---

[1]The October 2023 note documented a treatment period of March 2019 to October 2023. (Tr. at 1848, 1935.) However, the record contains other notes from Henderson dating back to 2016. (Tr. at 674.) Henderson retired in October 2023, and plaintiff continued treatment with another therapist at that time. (<u>See</u> Tr. at 1931.)

expert (VE), the ALJ concluded that plaintiff could perform jobs existing in significant numbers in the national economy. (Tr. at 37-38.) After the Appeals Council denied plaintiff's request for review (Tr. at 6), the ALJ's decision became the final word from the agency on plaintiff's application. This action followed.

## II. DISCUSSION

### A. Standard of Review

The court reviews an ALJ's decision to ensure that it is supported by "substantial evidence," uses the correct legal standards, and sets forth an accurate and logical bridge from the evidence to the ALJ's conclusions. Jeske v. Saul, 955 F.3d 583, 587 (7th Cir. 2020). Substantial evidence is a low threshold requiring only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Swiecichowski v. Dudek, 133 F.4th 751, 756 (7th Cir. 2025). In reviewing a decision for substantial evidence, the court will not re-weigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for that of the ALJ. Pufahl v. Bisignano, 142 F.4th 446, 454 (7th Cir. 2025).

But his does not mean the court simply rubber-stamps the ALJ's decision. Padua v. Bisignano, 145 F.4th 784, 789 (7th Cir. 2025). A decision that skips over important evidence or lacks adequate discussion of the issues will be remanded. Moy v. Bisignano, 142 F.4th 546, 552 (7th Cir. 2025); Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002). Further, the court reviews legal issues de novo, Bertaud v. O'Malley, 88 F.4th 1242, 1244 (7th Cir. 2023), and if the ALJ commits an error of law the court may reverse without regard to the volume of evidence in support of the factual findings, White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999). Finally, the court's review is limited to the ALJ's rationales; the court will not "uphold an ALJ's

decision by giving it different ground to stand upon." Jeske, 955 F.3d at 587 (citing SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943)).

**B. Plaintiff's Arguments**

Plaintiff argues the ALJ improperly evaluated Dr. Trippe's opinion and overlooked therapist Henderson's opinion. (Pl.'s Br. at 2-3.) She seeks remand to correct these errors. (Pl.'s Br. at 3.)

The regulations require an ALJ to consider all medical opinions in the case record. 20 C.F.R. § 404.1520c(b). A "medical opinion" is a statement from a medical source about what the claimant can still do despite her impairments and whether she has impairment-related limitations or restrictions in the abilities to perform the physical and mental demands of work activities, perform other demands of work, and adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2).

The ALJ need not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion, including those from the claimant's treating providers. 20 C.F.R. § 404.1520c(a). Rather, the ALJ must articulate how "persuasive" he finds the opinions. Id. § 404.1520c(b). The factors of "supportability" and "consistency" are the most important in determining how persuasive an opinion is; therefore, the ALJ must explain how he considered these two factors. Id. § 404.1520c(b)(2). Under the supportability factor, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(1). Under the consistency factor, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(2). Put another way, the supportability factor focuses on the opinion's internal explanation and support, while the consistency factor concerns the degree to which a medical opinion comports with other evidence in the record. See Bakke v. Kijakazi, 62 F.4th 1061, 1068 (7th Cir. 2023). Failure to consider both supportability and consistency is legal error requiring remand, unless the error is harmless. See, e.g., Liapis v. Bisignano, 180 F.4th 496, 951-52 & 953 (7th Cir. 2026); Landers v. Bisignano, No. 25-CV-175-SCD, 2026 U.S. Dist. LEXIS 551, at *21-22 (E.D. Wis. Jan. 5, 2026). The ALJ may, but is not required to, explain how he considered the other regulatory factors: the source's relationship with the claimant, the source's specialization, and the source's familiarity with the other evidence in the record or an understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(5).

However, the regulations also provide that certain evidence "is inherently neither valuable nor persuasive" and thus need not be discussed, even under § 404.1520c. 20 C.F.R.§ 404.1520b(c). This includes opinions on issues reserved to the Commissioner, e.g., statements that the claimant is disabled or able to perform regular and continuing work. Id. § 404.1520b(c)(3).

**1. Dr. Trippe's Opinion**

As indicated above, Dr. Trippe found moderate-to-severe overall impairment in plaintiff's cognitive, mental and/or emotional ability to perform previous work duties, and moderate-to-severe overall impairment in her cognitive, mental and/or emotional ability to perform unskilled work duties. (Tr. at 1698.) He further opined that she was likely to have moderate difficulty

working with supervisors and co-workers, may have difficulty coping with work stress or adapting to changes at work, and would benefit from the assistance of others to manage her money. (Tr. at 1698.) The ALJ found Dr. Trippe's opinion unpersuasive, concluding that Dr. Trippe failed to support his conclusions with his own examination findings; that the opinion was internally inconsistent, assessing moderate to severe impairment in plaintiff's cognitive and mental ability, while the exam showed no cognitive deficits and Dr. Trippe found that plaintiff would be unlikely to have difficulty understanding, recalling and carrying out work instructions and maintaining concentration; and that the opinion was vague, finding plaintiff would have "moderate difficulty" with supervisors and co-workers but assessing no specific limitations regarding the degree and frequency of interaction. (Tr. at 36.)

Plaintiff argues the ALJ failed to address the consistency of Dr. Trippe's opinion with the other evidence of record, focusing solely on internal factors in evaluating the persuasiveness of the report. (Pl.'s Br. at 10.) As courts have noted, ALJs must address both supportability and consistency in their decisions. See, e.g., Stevens v. Kijakazi, No. 21-CV-270-SCD, 2022 U.S. Dist. LEXIS 62131, at *20-21 (E.D. Wis. Apr. 4, 2022) (collecting cases).

The Commissioner responds that the ALJ reasonably credited the opinions of the two reviewing consultants, Drs. Johnson and VanHoose, over the opinion of the examining consultant, Dr. Trippe, and that plaintiff's argument is no more than an impermissible request to re-weigh the evidence. (Def.'s Br. at 2-3.) The Commissioner argues the ALJ adopted an RFC supported by the record, going further than Drs. Johnson and VanHoose in including additional limitations. (Def.'s Br. at 3-4.) The Commissioner contends the ALJ provided valid reasons for finding Dr. Trippe's opinion unpersuasive and properly deferred to Drs. Johnson and VanHoose, both of whom reviewed and considered Dr. Trippe's findings, translating them

into workable and useful mental limitations. (Def.'s Br. at 4-5.) The Commissioner concludes that the ALJ made clear he favored the more supported and consistent assessments from Drs. Johnson and VanHoose over the report from Dr. Trippe. (Def.'s Br. at 7.)

The primary problem with the Commissioner's position is that the ALJ did not rely on it in his decision. See Meuser v. Colvin, 838 F.3d 905, 911 (7th Cir. 2016) ("[T]he ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it.") (citing Chenery, 318 U.S. at 87-88). The ALJ never said that he found Dr. Trippe's report inconsistent with the opinions from Drs. Johnson and VanHoose. He did not even mention those opinions in assessing Dr. Trippe's report. Nor did he compare Dr. Trippe's report with any of the other evidence.[2] See Abigail C. v. Bisignano, No. 25-cv-50297, 2026 U.S. Dist. LEXIS 133755, at *9 (N.D. Ill. June 16, 2026) (rejecting as post-hoc the Commissioner's argument that the ALJ's consistency finding was supported by her broader RFC discussion, which referenced various examination findings and other medical opinions that assessed milder limitations). As plaintiff notes in reply, she does not ask the court to re-weigh this evidence but rather to remand for compliance with § 404.1520c. That the ALJ's RFC may have otherwise been supported by substantial evidence cannot cure this legal error.[3] (Pl.'s Rep. Br. at 1-2.)

---

[2]The Commissioner cites normal mental status exams and indications that plaintiff benefitted from treatment. (Def.'s Br. at 3.) However, the ALJ never contrasted that evidence with Dr. Trippe's findings.

[3]As plaintiff also notes in reply, the record does not support the Commissioner's claim that Drs. Johnson and VanHoose reviewed and considered Dr. Trippe's findings. (Pl.'s Rep. Br. at 3.) While the initial level assessment included a summary of Dr. Trippe's mental status exam (Tr. at 112-13), it then stated: "There is no indication that there is a medical opinion from any medical source." (Tr. at 114.) The reconsideration level assessment acknowledged Dr. Trippe's opinion, quoting from his assessment of her work capacity: "Kristie Mitchell is unlikely to have difficulty understanding, recalling, and carrying out work instructions. She is likely to have moderate difficulty working with supervisors and co-workers. She is unlikely to have

The ALJ's non-compliance with § 404.1520c requires remand. For the sake of completeness, I will address plaintiff's other challenges to the ALJ's evaluation of Dr. Trippe's opinion. In considering these arguments, I take note of the Seventh Circuit's admonition that, while "an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence[,] rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014).

Plaintiff first argues that the ALJ found internal inconsistency where there was none. (Pl.'s Br. at 10.) The ALJ faulted Dr. Trippe for assessing moderate to severe impairment in plaintiff's cognitive and mental ability, when his exam showed no cognitive deficits. However, Dr. Trippe actually found "moderate-to-severe overall impairment in her cognitive, mental, and/or emotional ability" to work. (Tr. at 1698, emphasis added.) He did not particularly emphasize cognitive limitations, and the ALJ pointed to no internal inconsistency with Dr. Trippe's examination findings relevant to emotional or other mental abilities. In any event, the exam did reveal some cognitive deficits, in particular with plaintiff's short-term recall and basic

---

difficulty maintaining her concentration on task. She may have difficulty coping with work stress or adapting to changes at work. She would benefit from the assistance of others to manage her money." (Tr. at 126.) However, the reconsideration assessment did not mention Dr. Trippe's finding that plaintiff displayed "moderate-to-severe overall impairment in her cognitive, mental, and/or emotional ability to perform unskilled work duties." (Tr. at 1698.) The reconsideration assessment then asserted that Dr. Trippe's opinion was not more restrictive than its findings; it further stated that Dr. Trippe's opinion was "partially consistent" with the medical evidence. (Tr. at 126.) In sum, even if it would be appropriate under Chenery to consider the Commissioner's argument that, by adopting the reports from Drs. Johnson and VanHoose, the ALJ adequately covered the consistency factor, the argument would fail on the merits. The Commissioner does not otherwise argue the ALJ's failure to consider the consistency factor is harmless in this case.

math skills (Tr. at 1697), findings the ALJ did not address (Pl.'s Br. at 10-11).

The Commissioner responds that any fair reviewer would find the statement that plaintiff had "moderate-to-severe overall impairment in . . . unskilled work duties" to be a direct contradiction to the statement two sentences later that plaintiff would be "unlikely to have difficulty understanding, recalling, and carrying out work instructions." (Def.'s Br. at 5, quoting Tr. at 1698). As plaintiff notes in reply, however, Dr. Trippe did endorse difficulties in interaction and adaptation, informing his assessment of moderate-to-severe overall impairment. And the Commissioner does not address the cognitive limitations (impaired short-term recall and poor basic math skills) Dr. Trippe found on exam. (Pl.'s Rep. Br. at 5.) The ALJ should reconsider the internal consistency of Dr. Trippe's opinion on remand.

Plaintiff also faults the ALJ for discounting Dr. Trippe's opinion as vague—in that it did not assess specific interaction limitations—without first seeking clarification. (Pl.'s Br. at 11.) Under the regulations, an ALJ should follow up when a consulting source fails to provide specific limitations. See 20 C.F.R. § 404.1519p(b) ("If the report [from a consultative examination] is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."); see, e.g., Cieszynski v. Kijakazi, No. 03-4076, 2023 U.S. App. LEXIS 6109, at *15 (7th Cir. Mar. 15, 2023) ("If the ALJ was concerned that Dr. Linford did not provide any specific limitations or explain the rationale for his conclusions, he should have followed up with the doctor.") (internal quote marks omitted); Paul v. Berryhill, 760 Fed. Appx. 460, 464 (7th Cir. 2019) ("[I]f the ALJ believed that Dr. Powell's opinion was deficient, the ALJ should have sought additional clarification from Dr. Powell before discounting it outright."); Joshua R. v. Bisignano, No.

1:25-cv-02300-TAB-JRS, 2026 U.S. Dist. LEXIS 180017, at *6-7 (S.D. Ind. Aug. 12, 2026) (collecting cases remanding where, instead of re-contacting a consultative examiner for clarification, the ALJ discounted the examiner's opinion for being deficient); Delta M. v. Bisignano, No. 3:25-CV-225-SJF, 2026 U.S. Dist. LEXIS 3967220, at *19-20 (N.D. Ind. Feb. 25, 2026) (holding the ALJ's finding that a report was "vague" implied that it was incomplete or inadequate, triggering the duty to re-contact under the regulations).

The Commissioner responds that the ALJ was not required to re-contact Dr. Trippe, as the record was otherwise sufficient for the ALJ to make a decision. (Def.'s Br. at 6.) The Commissioner cites Cain v. Bisignano, where the Seventh Circuit rejected a similar argument:

> [W]hile the ALJ found Dr. Lovko's opinion that Cain could attend to tasks for a sufficient period to complete them was vague, the ALJ was not required to seek clarification from Dr. Lovko. We have only required an ALJ to seek additional information if the support for a medical opinion is not readily discernable. Here, the record contained sufficient information necessary to make an assessment.

148 F.4th 490, 499 (7th Cir. 2025) (internal citations and quote marks omitted). In any event, the Commissioner contends, the ALJ provided other valid reasons for discounting Dr. Trippe's opinion. (Def.'s Br. at 6.)

Cain involved the opinion of an agency reviewing consultant, not an examining consultant. Further, the claimant there cited no regulatory authority for seeking clarification; here, plaintiff relies on § 404.1519p and cases applying it. (Pl.'s Rep. Br. at 6.) The ALJ should on remand consider re-contacting Dr. Trippe before discounting his opinion as inadequate or incomplete. See Joshua R., 2026 U.S. Dist. LEXIS 180017, at *7 (noting that, unlike § 404.1520b(b), which generally requires the ALJ to obtain additional evidence only when the record is insufficient, § 404.1519p(b) imposes a more specific duty concerning an examiner's

report).[4]

Finally, the ALJ failed to address Dr. Trippe's finding that plaintiff may have difficulty coping with work stress or adapting to changes at work. (Pl.'s Br. at 11-12.) As plaintiff notes, the ALJ included in the RFC no limitations on workplace changes, nor did he explain why such limitations were unnecessary. (Pl.'s Br. at 12.)

The Commissioner responds that the ALJ was not required to provide reasons for individually discounting each of Dr. Trippe's limitations. (Def.'s Br. at 6-7.) The Commissioner relies on cases holding an ALJ's duty of articulation is minimal, and he need not address every piece of evidence in the record. (Def. Br. at 7.) Plaintiff replies that the ALJ must confront evidence that does not support his conclusion and explain why it was rejected. (Pl.'s Rep. Br. at 6, citing Stephens v. Berryhill, 888 F.3d 323, 329 (7th Cir. 2018).) While an ALJ is not required to comment on every line of a doctor's report, e.g., Beaudo v. Kijakazi, No. 22-C-1472, 2023 U.S. Dist. LEXIS 172546, at *32-33 (E.D. Wis. Sept. 27, 2023), under the circumstances here, where all of the medical opinions suggest problems with adaptation and change (see Tr. at 115, 127, 1936), the ALJ should on remand consider whether Dr. Trippe's report supports the inclusion of additional adaptation limitations.

Plaintiff concludes that the ALJ's flawed evaluation of Dr. Trippe's opinion cannot be

---

[4] I also note the tension between the ALJ's decision to partially credit the reports of Drs. Johnson and VanHoose, despite their failure to provide specific social interaction limitations, and his decision to discount Dr. Trippe's report as vague based on the same omission. See Liapis, 180 F.4th at 952 ("This inconsistent treatment of the two opinions is illogical."); Joshua R., 2026 U.S. Dist. LEXIS 180017, at *11 (remanding where the ALJ faulted the examiner for not using vocational terminology but did not apply the same standard to the non-examining consultants). To the extent the Commissioner argues the ALJ's reliance on vagueness was harmless because the ALJ provided other reasons for discounting Dr. Trippe's opinion, for the reasons set forth above those reasons are also flawed.

deemed harmless, for if the opinion is adopted there would be no jobs. (Pl.'s Br. at 12-13.) The Commissioner responds that this argument puts the cart before the horse; the ALJ properly discounted Dr. Trippe's opinion, so he did not need to consider whether jobs existed based on Dr. Trippe's findings. (Def.'s Br. at 8.) Because the ALJ failed to properly evaluate this opinion, and I cannot find the error harmless, the matter must be remanded.

**2. Therapist Henderson's Opinion**

The ALJ overlooked therapist Henderson's discharge summary, completed after 4-½ years of treatment, that plaintiff "continues to struggle with establishing a daily routine with structure," "has had many attempts at employment all of which have not been successful," and "experiences a high degree of social anxiety which limits her ability to seek out and maintain employment as well as develop friendships." (Tr. at 1936; Pl.'s Br. at 13.) Plaintiff contends that this statement qualifies as a "medical opinion" because it addresses the "mental demands of work activities." 20 C.F.R. § 404.1513(a)(2)(ii). She notes that agency psychological consultants are routinely asked to comment about the claimant's ability to perform activities within a schedule and sustain an ordinary routine without special supervision. (Pl.'s Br. at 13-14; see Tr. at 114, 127, Drs. Johnson and VanHoose assessing these abilities in this case.) Plaintiff contends Henderson's statement is tantamount to a finding that she has significant problems with establishing and sustaining a routine, a finding bolstered by his notation that she has been unable to sustain employment. By failing to address this opinion, the ALJ violated the requirement in § 404.1520c that the ALJ evaluate the persuasiveness of all medical opinions of record. (Pl.'s Br. at 14.) Plaintiff concludes that, if adopted, this opinion would likely preclude all work; even if found only partially persuasive, it may prompt the ALJ to include in the RFC additional supervision to aid her in sustaining a routine or additional social limitations to

account for her anxiety and difficulty maintaining relationships. (Pl.'s Br. at 14-15.)

The Commissioner responds that Henderson's statement does not qualify as a medical opinion because it does not define what plaintiff can still do despite her impairments. (Def.'s Br. at 8-9.) Even if it could be considered a medical opinion, the Commissioner argues the statement can be dismissed as "inherently neither valuable nor persuasive." That plaintiff might be limited in seeking out and maintaining employment is a statement on an issue reserved to the Commissioner, and the vague statement that plaintiff struggled with a daily routine does not pertain to work activities. (Def.'s Br. at 9.) The Commissioner further argues that one cannot compare Henderson's comment on establishing a daily routine to the specific vocational assessment agency consultants are tasked with making, an assessment the consultants then translate into useful limitations. (Def.'s Br. at 9-10.) Finally, the Commissioner argues plaintiff can only speculate that adoption of Henderson's opinion would preclude all work, as Henderson suggested no specific limitations, e.g., additional supervision, extra breaks, or absences. (Def.'s Br. at 10.)

The Seventh Circuit has rejected the notion that a medical opinion must "address both what a claimant 'can still do' and whether the claimant has specific 'impairment-related' limitations." Jones v. Dudek, 134 F.4th 991, 996 (7th Cir. 2025). "In other words, a plaintiff can show that a statement is a medical opinion by demonstrating either that the statement addresses what a claimant can still do, or specific impairment-related limitations." (Pl.'s Rep. Br. at 8.) Here, plaintiff contends, Henderson's statement about her ability to sustain a routine is a mental impairment related limitation. (Pl.'s Rep. Br. at 8.) Finally, plaintiff argues the Commissioner's contention that the opinion is vague and does not pertain to work activities is impermissibly post-hoc. (Pl.'s Rep. Br. at 8-9.) In any event, since he noted her many

unsuccessful attempts to work over their years together Henderson must have been referring to plaintiff's inability to sustain an ordinary routine both at home and in the workplace. (Pl.'s Rep. Br. at 9 n.7.)

In Jones, the Seventh Circuit opted for a broad definition of the term "medical opinion," which would seem to encompass Henderson's statement about plaintiff's inability to establish a daily routine with structure. The Commissioner develops no argument that this statement need not be addressed under § 404.1520b(c)(3). Cf. Jones, 135 F.4th at 997-98 (holding that a doctor's statement that the claimant cannot work more than 20 hours per week, while a medical opinion, was tantamount to a statement about whether the claimant could perform regular work and thus did not require discussion). The appropriate course is to remand so the ALJ may evaluate Henderson's opinion for whatever persuasive value it may have and include in the RFC whatever additional limitations he finds supported.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is reversed, and this matter is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four. The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 18th day of August, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge